IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PROGRESSIVE CASUALTY INSURANCE. CO., )<br>                                             )<br>      Plaintiff,                 )<br>                                             )<br>vs.                                          )<br>                                             )<br>GEORGE A. LUNA,                 )<br>                                             )<br>      Defendant.              ) | Case No. 05-cv-4194-JPG |

**MEMORANDUM AND ORDER**

This matter comes before the Court after a bench and jury trial held March 26 to 29, 2007. The Court notes that it has jurisdiction to hear this case under 28 U.S.C. § 1332(a)(1) in that it is a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

Prior to commencement of the trial, which was originally set to be only a jury trial, the issue was raised whether this case should instead be tried to the Court in light of plaintiff Progressive Casualty Insurance Company's ("Progressive") equitable theories and requests for equitable relief. The case had been scheduled for a jury trial pursuant to Progressive's jury demand; defendant George Luna ("Luna") made no such demand. In an informal, untranscribed conference on the morning of trial, Progressive conceded that a bench trial was appropriate for Count I (alleging a claim for rescission of an insurance policy based on fraud in the inducement), but maintained it had a right to a jury determination of the facts in dispute in Counts II, III and IV. Luna did not object. The Court noted that the issues involved in Count I were discrete from the other issues in this case and decided to bifurcate the trial, hearing Count I itself on March 26 and 27 and submitting the factual disputes in Counts II, III and IV to a jury on March 27 to 29. By failing to object to this method of trying the issues in this case, Luna has waived any

objections to submission of any matter to the Court or to the jury.  During the trial, Progressive was represented by James DeFranco and Rebecca Van Court, and Luna was represented by Terry M. Green.

On March 29, 2007, the jury rendered a verdict on Counts II and III in favor of Progressive and on Count IV in favor of Luna.[1]  However, the Court's findings of fact and conclusions of law with respect to Count I mandates judgment as a matter of law on Counts II, III and IV and renders the jury verdicts on those counts moot.  The claims in this case are therefore resolved as follows:

**I.      Findings of Fact and Conclusions of Law:  Count I**

In Count I, Progressive seeks rescission of an insurance policy based on fraud in the inducement.  Progressive alleges that Luna and his former girlfriend, Marcia Lowery (f/k/a Marcia Davis) ("Lowery"), failed to disclose a September 2003 house fire at their house when asked about previous fires and insurance claims during the insurance application process.  Progressive seeks to void the policy based on this alleged misrepresentation.  During the bench trial, Progressive called Luna, independent insurance agent Paula Miller ("Miller") and Lowery as witnesses.  Luna called only Lowery to testify.  Pursuant to Federal Rule of Civil Procedure 52, the Court makes the following findings of fact and conclusions of law:

   A.      <u>Findings of Fact</u>

In May or June 2004, Luna and Lowery began looking for insurance to cover their mobile home at 104 Coal Street, West Frankfort, Illinois.  Their prior insurance had been discontinued because they had not made certain repairs and improvements to the mobile home.

---

[1] For the purposes of the jury trial, the counts were renumbered as Counts I, II and III, corresponding to Counts II, III and IV in the complaint.

A number of insurance companies turned them down after they disclosed that there had been a fire in their house on the property in September 2003.

There is considerable conflicting testimony about what occurred during the insurance application process. Lowery testified that she called Miller, an independent insurance agent at the Willis & Miller Insurance Agency who wrote policies for Progressive, to investigate obtaining an insurance policy through her. Lowery said she immediately disclosed the September 2003 fire so as not to waste Miller's time filling out an application if the prior fire was going to preclude Luna and Lowery from purchasing a policy through Miller. Lowery testified that she then gave Miller information over the telephone to apply for insurance on-line through Prorater, a computerized application program.

Miller testified that she spoke to Luna, not Lowery, on the telephone to get the relevant information to complete the Prorater application. She testified that she asked Luna whether he had made any claims on a homeowner's insurance policy within the past three years and whether he had suffered a fire loss within the past five years and that he answered "no" to both questions. If a customer answers the fire loss question "yes," Prorater displays a box saying the risk is unacceptable and terminates the application process, and Progressive will not issue the policy. Miller testified that Luna did not mention the September 2003 house fire and that had he mentioned a fire within the preceding five years Progressive would not have written the policy. Miller indicated that, although she had been uncertain in earlier months whether she had talked to Luna or Lowery over the phone, she was sure at the time of trial that she had spoken to Luna, because she had checked his credit score after the phone call.

Luna testified that the only time he spoke with Miller or the Willis and Miller Insurance Agency was when someone from the agency called Luna to inform him Progressive would write

a policy for his mobile home. Luna testified that he responded by expressing his gratitude that Progressive would cover the mobile home in spite of the prior house fire.

On July 9, 2004, Lowery went to Miller's office to sign an application for insurance (Pl. Ex. 9). The application contains an entry reading, "NUMBER OF LOSSES: 0." Lowery signed the application but never mentioned the September 2003 house fire during that visit to Miller's office.

The Court finds that Miller was more credible than Lowery and Luna as to the events that transpired during the application process. The Court draws this conclusion based on Miller's demeanor while testifying and her testimony's consistency with the other evidence in the case and the reasonable conclusions that can be drawn therefrom. Miller's testimony that she spoke with Luna is supported by the evidence that she checked Luna's, not Lowery's, credit record when she processed the application. Furthermore, it is undisputed that Prorater would have rejected Luna's application had he admitted a fire loss within the preceding five years without even allowing Miller to reach the stage where Progressive would agree to cover his mobile home. That Miller was able to complete the application process is evidence that she asked and received acceptable answers to the prior loss questions. Furthermore, the written application reflects that Luna answered that there had been no prior losses, and Lowery adopted that misrepresentation by signing the application.

On December 2, 2004, a fire of incendiary nature destroyed Luna's shed at 104 Coal Street, West Frankfort, Illinois. Luna filed a claim under his policy, and Progressive paid Luna $12,138 for the loss.

On March 22, 2005, a fire of incendiary nature destroyed Luna's mobile home on the property. Luna filed a claim under the policy claiming a loss in excess of $75,000. In response, Progressive filed this lawsuit seeking to rescind the policy based on fraud in the inducement.

B.   Conclusions of Law

Under Illinois law, an insurance company may rescind a policy where the insured made a material misrepresentation in an application for insurance either with the intent to deceive or where the misrepresentation materially affects the acceptance of the risk by the insurer. *Methodist Med. Ctr. of Ill. v. American Med. Sec. Inc.*, 38 F.3d 316, 319 (7th Cir. 1994); *see* 215 ILCS 5/154. In addition to affirmative misrepresentations, "[i]ncomplete answers or a failure to disclose material information on an application for insurance may constitute a misrepresentation when the omission prevents the insurer from adequately assessing the risk involved." *Methodist Med. Ctr.*, 38 F.3d at 320. "A misrepresentation is material if reasonably careful and intelligent persons would regard the facts as stated to substantially increase the chances of the event insured against, so as to cause a rejection of the application." *Id.* (internal quotations omitted). The insurer must prove his claim for rescission by clear and convincing evidence. *Hungerford v. Behrends*, 139 N.E. 422, 425 (Ill. 1923).

In this case, Luna's statement that he had suffered no prior losses, adopted by Lowery in the insurance application, was a material misrepresentation that was a determining factor in whether Progressive was willing to accept the risk of insuring Luna's mobile home. The misrepresentation was material because disclosure of a prior homeowner's insurance loss would have led a reasonable person to believe that the risk of a subsequent similar loss was more likely.

Indeed, had Luna disclosed the September 2003 fire in his application, Progressive would not have insured him. Thus, Progressive is entitled to rescind the insurance policy.[2]

To effect a rescission, the Court must put the parties back into the same positions they had been in before the policy was issued. *See Puskar v. Hughes*, 533 N.E.2d 962, 966 (Ill. App. Ct. 1989). This includes returning all the consideration received for the policy. *LifeUSA Ins. Co. v. Green (In re Green)*, 241 B.R. 187, 200 (Bankr. N.D. Ill. 1999). Thus, in this case, Luna must return the $12,138 Progressive paid under the insurance policy for the shed fire, and Progressive must return to Luna the total amount of premiums he paid under the policy. Because this amount is not reflected in the current record, the Court will order Progressive to file on or before June 29, 2007, an affidavit stating the total amount of premiums received from Luna for the policy. The Court will withhold entry of final judgment until that time.

## II. Jury Verdicts: Counts II, III and IV

With respect to Count II, Progressive's claim seeking to void the policy based on Luna's alleged misrepresentation during Progressive's claim investigation of the March 22, 2005, mobile home fire, the jury found that Luna intentionally misrepresented or concealed a material fact or circumstance during that investigation. With respect to Count III, Progressive's claim seeking a declaration that the policy did not cover the March 22, 2005, mobile home fire because Luna intentionally procured the fire, the jury found that Luna intentionally set fire to his mobile home on March 22, 2005, damaging the mobile home. With respect to Count IV, Progressive's

---

[2]At one point during the trial, the issue was raised whether there was sufficient written evidence of a misrepresentation. The Illinois Insurance Code bars an insurer from denying coverage or voiding a policy base on an insured's misrepresentation during the policy negotiation process unless that misrepresentation is also reflected in or attached to the insurance policy itself or a written application. *See* 215 ILCS 5/154; *Chicago Meat Processors, Inc. v. Mid-Century Ins. Co.*, 962 F. Supp. 119, 120 (N.D. Ill. 1997). The application signed by Lowery satisfies the requirement for a written misrepresentation.

claim for unjust enrichment when Luna retained insurance proceeds from Progressive for the shed fire, the jury found that Progressive had not proved (1) that Luna's shed and its entire contents were destroyed or damaged by fire on December 2, 2004, (2) that Luna intentionally set fire to his shed then, and (3) that Luna received $12,138 in insurance proceeds for the shed fire. However, in light of the Court's decision in Count I to rescind the policy, Counts II, III and IV are rendered moot.  Thus, the Court will dismiss Counts II, III and IV with prejudice.

## II.     Conclusion

For the foregoing reasons the Court **ORDERS** Progressive to file on or before June 29, 2007, an affidavit stating the total amount of premiums received from Luna for the policy, **DISMISSES** Counts II, III and IV with prejudice and **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case.  Upon receipt of the affidavit from Progressive, the Court will enter judgment requiring each party to restore the other to the position it was in prior to the issuing of the insurance policy.

**IT IS SO ORDERED.**
**DATED:  June 7, 2007**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**
